UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NEW LANSING GARDENS HOUSING, LIMITED PARTNERSHIP, | ) ) ) | |
| PLAINTIFF, | ) ) | Civil Action No. |
| vs. | ) ) | |
| COLUMBUS METROPOLITAN HOUSING AUTHORITY | ) ) ) | |
| and | ) ) | |
| ASSISTED HOUSING SERVICES CORPORATION, | ) ) ) | **COMPLAINT** |
| DEFENDANTS. | ) | |

Plaintiff seeks declaratory and injunctive relief to remedy defendants' breach of provisions in a Section 8 housing contract that govern plaintiff's entitlement to certain fifth-year adjustment of contract rents, to be effective on November 1, 2019.

**PARTIES**

1.      Plaintiff New Lansing Gardens Housing, L.P. ("New Lansing") is an Ohio limited partnership.  New Lansing is the owner of an apartment property known as Lansing Gardens located in Bridgeport, Ohio, that is subject to a Project-Based Section 8 Housing Assistance Payments Renewal Contract ("Renewal Contract").

2.      Defendant Columbus Metropolitan Housing Authority ("Columbus Housing Authority") is a public housing authority created by Ohio statute as a body corporate and politic. In or about April 2000, HUD announced its award for contract administration to Columbus

Housing Authority for the project-based Section 8 program within Ohio. At all relevant times, Columbus Housing Authority acted through defendant Assisted Housing Services Corporation, its authorized agent for contract administration of the Renewal Contract.

3. Defendant Assisted Housing Services Corporation ("Assisted Housing") is a non-profit Ohio corporation with a principal place of business in Columbus, Ohio, and served as authorized agent for Columbus Housing Authority at all relevant times.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is grounded in federal question jurisdiction, 28 U.S.C. Section 1331.

5. Venue is proper in this forum pursuant to 28 U.S.C. Section 1391 (b)(1) because defendants are entities organized under Ohio law and resident in this judicial district.

## FACTUAL ALLEGATIONS

### Section 8 Housing Renewal Contract

6. The parties to the Renewal Contract are New Lansing and Columbus Housing Authority, by its agent Assisted Housing (collectively referred to herein as "Assisted Housing" or "Contract Administrator"). A copy of the Renewal Contract is attached hereto as **Exhibit A**.

7. The Renewal Contract, effective November 1, 2014, was established as a Mark-Up-To-Market ("MUTM") contract under Option 1A of the Section 8 Renewal Policy Guide Book effective May 8, 2012 ("2012 Guide Book") that was in effect in 2014.

8. The Renewal Contract has a twenty (20) year term. HUD reviewed and approved the Renewal Contract and signified its approval by executing the Renewal Contract.

9. The initial contract rents approved for Lansing Gardens were set forth on Exhibit 1 to the Renewal Contract. These initial rents were based on a rent comparability study ("RCS")

submitted by New Lansing to Assisted Housing in June 2014.  New Lansing's RCS was prepared by the Gill Group Inc. ("Gill Group") in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP") and Chapter 9 of the 2012 Guide Book then in effect (the "2014 Gill RCS"). The initial rents were established through a process of comment and negotiation between New Lansing and Assisted Housing, which retained Garvin Appraisal Company of Columbus, Ohio ("Garvin Appraisal") to review the 2014 Gill RCS.  The initial rents on Exhibit 1 of the Renewal Contract were approved on or about January 22, 2015, retroactive to November 1, 2014.

10.     The 2014 Gill RCS, approved by Assisted Housing (and HUD), based on the substantive review of Garvin Appraisal, established the reasonable market area and comparable properties for Lansing Gardens for the purpose of determining the market rents New Lansing could charge for each apartment pursuant to the Renewal Contract.

11.     At issue in this case is the fifth-year adjustment of contract rents governed by Section 5 of the Renewal Contract ("Fifth-Year Adjustment').  Under the Renewal Contract, the Contract Administrator is obligated to "reasonably determine" and adjust monthly contract rents for Lansing Gardens for each 5-year period of the 20-year term. The Fifth-Year Adjustment contemplated submission of a new RCS by New Lansing.

12.     In pertinent part, Sections 5b (2) (b) and (c) of the Renewal Contract provide:

(b) At the expiration of each 5-year period of the Renewal Contract term, the contract administrator shall compare existing contract rents with comparable market rents for the market area. **At such anniversary of the Renewal Contract, the contract administrator shall make any adjustments in the monthly contract rents, as reasonably determined by the contract administrator in accordance with HUD requirements, necessary to set the contract rents for all unit sizes at comparable market rents.** Such adjustments may result in a negative adjustment (decrease) or positive adjustment (increase) of the contract rents for one or more-unit sizes.

(c) **To assist in the determination of the contract rents, the contract administrator may require that the owner submit to the contract administrator a rent comparability study (at the owner's expense) in accordance with HUD requirements.**

(Emphasis added).

13. While Section 5b (2) (c) requires the owner to submit an RCS for the Fifth-Year Adjustment to be in accordance with HUD requirements, because HUD regulations and requirements are constantly changing, as a safeguard, Section 8 of the Renewal Contract expressly prohibits the Contract Administrator, when administering the Renewal Contract, from applying subsequent changes in HUD regulations and requirements when such subsequent changes are "inconsistent with provisions of the Renewal Contract, including the provisions of Section 5" governing contract rents and the Fifth-Year Adjustment.  Section 8 of the Renewal Contract provides in full:

> The Renewal Contract shall be construed and administered in accordance with all statutory requirements, and with all HUD regulations and other requirements, including amendments or changes in HUD regulations and other requirements during the term of the Renewal Contract. **However, any changes in HUD regulations and requirements which are inconsistent with the provisions of the Renewal Contract, including the provisions of Section 5 (contract rent) and Section 10 (distributions), shall not be applicable.**

(Emphasis added).

### New Lansing's RCS Submitted For The Fifth-Year Adjustment Was Approved

14. In June 2019, New Lansing submitted a new RCS prepared by Gill Group to Assisted Housing in support of its Fifth-Year Adjustment to be effective November 1, 2019 (the "2019 Gill RCS").  The 2019 Gill RCS effectively utilized the same market area and comparable properties used in the 2014 Gill RCS that had been approved for the Renewal Contract by Assisted Housing and HUD.

15. Assisted Housing as Contract Administrator retained a third-party appraiser to perform a substantive review of the 2019 Gill RCS.  After the substantive review was completed

4

and approved, an internal appraiser at Assisted Housing performed a quality control review of the 2019 Gill RCS. New Lansing was advised by Assisted Housing both verbally and by email that the 2019 Gill RCS was approved.

**The Contract Administrator Acted In Concert With HUD To Breach The Renewal Contract**

16.     Notwithstanding that Assisted Housing approved the 2019 Gill RCS and thus was required under Section 5 of the Renewal Contract to submit a revised schedule of contract rents for the Fifth-Year Adjustment in accordance with the approved 2019 Gill RCS, Assisted Housing breached Section 5 of the Renewal Contract by submitting the approved 2019 Gill RCS to HUD for its independent approval. Section 5 does not contemplate or authorize an additional approval of the 2019 Gill RCS by HUD.

17.     The sole basis cited by Assisted Housing for submitting New Lansing's approved RCS to HUD for further approval was the so-called "140% Rule," which was <u>not</u> in the 2012 Guide Book effective in 2014 when Assisted Housing and New Lansing entered into the Renewal Contract. The 140% Rule was first introduced to the Guide Book effective November 5, 2015 ("2015 Guide Book") and is now found in Section 9-14 of the current Guide Book effective July 28, 2017 ("2017 Guide Book"). Subsection A of Section 9-14, entitled Mandatory Market Rent Determination, sets forth additional requirements if the owner's RCS establishes market rents exceeding 140% of the median gross rents for the zip code in which the project is located as reflected in the United States Bureau of the Census database. When the 140% Rule is triggered an independent HUD-commissioned, RCS is required in accordance with the 2017 Guide Book.

18.     On information and belief, Assisted Housing acted under HUD's direction and control when it cited the 140% Rule to require further HUD approval. Assisted Housing understood that HUD would require a new RCS under Section 9-14 of the 2017 Guide Book which

would eviscerate Assisted Housing's approval of the 2019 Gill RCS.  HUD was allowed by the Contract Administrator, in violation of the Renewal Contract, to take complete control of the Fifth-Year Adjustment process.

19.     Assisted Housing as Contract Administrator was required to act in good faith in determining the Fifth-Year Adjustment pursuant to Section 5 of the Renewal Contract as written and was prohibited by Section 8 of the Renewal Contract from applying subsequent changes in HUD's Guide Book that were inconsistent with the Renewal Contract.  Neither the Renewal Contract nor the 2012 HUD Guide Book imposed the 140% Rule on the 2019 Gill RCS or required or contemplated HUD's additional review and approval of the 2019 Gill RCS submitted to Assisted Housing, the Contract Administrator, for the Fifth-Year Adjustment.  Further, neither the Renewal Contract nor the 2012 Guide Book authorized the Contract Administrator (or HUD) to require another RCS as an alternate to New Lansing's approved RCS for the purpose of establishing the Fifth-Year Adjustment of contract rents.

20.     In sum, under Section 5, Assisted Housing as Contract Administrator was authorized to review (in good faith) the 2019 Gill RCS to ensure it was prepared in accordance with HUD requirements.  Undoubtedly, Assisted Housing performed that review and approved the 2019 Gill RCS.  But Assisted Housing could not thereafter apply the 140% Rule from the 2017 Guide Book, a subsequent HUD requirement created _after_ the Renewal Contract, to abrogate its authority and responsibilities to HUD to determine the Fifth-Year Adjustment under the Renewal Contract.  HUD had no authority under the Renewal Contract or the 2012 Guide Book to determine, approve or otherwise participate in the Fifth-Year Adjustment.

21.     Assisted Housing violated Section 5 and Section 8 of the Renewal Contract when, after it had approved the 2019 Gill RCS, it injected the 140% Rule into the straight-forward Fifth-

Year Adjustment process to abrogate authority and control of the Fifth-Year Adjustment process to HUD, knowing that HUD would require a new RCS to eviscerate the 2019 Gill RCS it had approved. The Contract Administrator thus imposed new and additional procedural and substantive requirements on New Lansing inconsistent with the terms of Section 5's provision for the Fifth-Year Adjustment.

**HUD Took Control Of The Fifth-Year Adjustment Process And Acted In Bad Faith**

22. As noted, HUD, without authority in the Renewal Contract, was allowed by the Contract Administrator to take complete control of the Fifth-Year Adjustment process. HUD commissioned a competing RCS by Feasibility Research Group ("FRG") to undermine and eviscerate New Lansing's approved RCS. FRG's RCS dated December 2, 2019 was not the product of a fair and independent process but was managed and controlled by HUD. Moreover, the FRG study contained a host of obvious and substantial errors, deficiencies and manipulations which HUD thoroughly ignored when New Lansing submitted in January 2020 a detailed 17-page analysis and protest of both the FRG study and HUD's commandeering of the Fifth-Year Adjustment process in violation of the Renewal Contract.

23. FRG conducted a cursory site inspection of Lansing Gardens on September 19, 2019 and informed New Lansing that its RCS was due to HUD in the first week of October, a deadline FRG stated it would meet. New Lansing was informed by HUD on October 7, 2019 that FRG's report was to be submitted to HUD's Chicago office that day and that New Lansing would likely receive a copy of the report that week. In fact, FRG's RCS was not finalized and "submitted" until 2 1/2 months after the site visit (on December 2, 2019) and only after FRG further met with HUD officials in Detroit on November 20, 2019 to discuss "issues" with the study.

24.     Four days after FRG's December 2, 2019 RCS, by letter dated December 6, 2019, Assisted Housing forwarded to New Lansing a revised Rent Schedule (HUD form 92458) for execution.  The Rent Schedule reflected adjusted rents derived from FRG's RCS.   Incredibly, the adjusted rents submitted to New Lansing were lower than the existing contract rents in effect prior to the initiation of the Fifth Year Adjustment process in June 2019.

25.     Thereafter, New Lansing communicated objections to Assisted Housing and HUD in several emails.  On December 16, 2019, New Lansing executed a Rent Schedule based on the approved 2019 Gill RCS and forwarded it to Assisted Housing and HUD for approval and execution, which was ignored.  Ultimately, as noted, New Lansing prepared and submitted to HUD, on January 30, 2020, a detailed 17-page analysis and protest of both the FRG defective rent study and HUD's commandeering of the Fifth-Year Adjustment process in violation of the Renewal Contract.  New Lansing's analysis and protest examined in detail the defective nature of the FRG rent study and attached in support a report dated January 24, 2020 from Gill Group.

26.     HUD's 2-page response came on March 31, 2020.  HUD ignored everything in New Lansing's January 30, 2020 analysis and protest, except to address three specific and very minor line items in the HUD form 92273-S8 forwarded by Assisted Housing.  HUD stated that New Lansing's objections came within Chapter 9-14C of the 2017 Guide Book, that the objections merely represented subjective opinions, and that Chapter 9-14 C did not allow any appeal of a HUD-ordered RCS.   HUD did not address New Lansing's protest that HUD improperly commandeered the Fifth-Year Adjustment process in violation of the Renewal Contract, that HUD's process was not fair and independent, and finally that FRG's December 2, 2019 RCS was wholly manipulated, improper and violative of the very version of the 2017 Guide Book upon which HUD and Assisted Housing relied.  HUD and Assisted Housing turned a blind eye to New

Lansing's detailed complaint concerning FRG's study and their improper conduct and reaffirmed the December 6, 2019 Rent Schedule that had been submitted to New Lansing.

27. Briefly, as detailed in New Lansing's 17-page protest and analysis, FRG's December 2, 2019 RCS is fatally defective, including, without limitation, the following:

- FRG failed to properly evaluate the condition of and services provided at Lansing Gardens, resulting in a rent reduction of approximately $87,000 per annum in its RCS for these attributes alone;

- FRG's rent study ignored the market area and comparable properties for Lansing Gardens used in the 2014 Gill RCS approved for the Renewal Contract, and instead created a gerrymandered market area that ignored the actual area from which Lansing Gardens drew its rental applicants;

- Having created a gerrymandered market area, FRG then relied on comparable properties not contained in the market area it created. Half of FRG's comparable properties were not in FRG's designated market area. One of the properties was an hour drive away in Pennsylvania after having passed through West Virginia;[1]

- FRG failed to properly inspect, evaluate and adjust the comparable properties it relied on vis-à-vis Lansing Gardens;

- FRG's RCS failed to meet numerous standards required in the 2017 Guide Book for preparation of a rent comparability study; and

- There is a stark difference in the rent potential for New Lansing derived from the 2019 Gill RCS ($670,800) and the FRG RCS ($488,544).

28. In sum, New Lansing has maintained Lansing Gardens as a Section 8 apartment property for 30 years without default or other blemishes in its performance. At HUD's physical inspection in January 2020 the property received an excellent score of 95. New Lansing was entitled under the Renewal Contract to a fair and independent process to determine the Fifth-Year

---

[1] Under the governing statute, the term comparable properties means properties not receiving Section 8 assistance in the same market areas where practicable that are similar to the housing project's as to neighborhood (including risk of crime), type of location, access, street appeal, age, property size, apartment mix, physical configuration, property and unit amenities, and other relevant characteristics. See Section 512 (1) of the Multifamily Assisted Housing Reform and Affordability Act of 1997, 42 U.S.C. Section 1437f.

Adjustments by the Contract Administrator. Assisted Housing (in concert with HUD) acted in bad faith and in breach of the Renewal Contract in abrogating to HUD its authority and responsibilities to determine the Fifth-Year Adjustment and in acquiescing to HUD's improper conduct in commissioning and approving FRG's RCS.

## NEW LANSING'S CLAIMS

### COUNT ONE
### BREACH OF THE RENEWAL CONTRACT

29.     New Lansing incorporates by reference the allegations contained in all previous paragraphs as if fully restated herein.

30.     As alleged herein, Assisted Housing and Columbus Housing Authority intentionally and willfully breached their obligations as Contract Administrator to reasonably determine the Fifth-Year Adjustment of contract rents to which New Lansing was entitled under Section 5 and Section 8 of the Renewal Contract.

31.     By their conduct alleged herein, Assisted Housing and Columbus Housing Authority (in concert with HUD) intentionally and willfully breached the implied covenant of good faith and fair dealing in their performance of the Renewal Contract and specifically with respect to the Fifth-Year Adjustment under Section 5 and Section 8 thereof.

32.     New Lansing has complied with all of its obligations under the Renewal Contract.

33.     New Lansing has been injured as a direct consequence of the breach of the Renewal Contract by Assisted Housing and Columbus Housing Authority.

34.      New Lansing is entitled to declaratory and injunctive relief necessary to remedy the breach of the Renewal Contract for defendants' past and continuing breaches of the Renewal Contract. Such relief is necessary to ensure New Lansing's right to charge appropriate rents effective November 1, 2019, going forward for the remainder of the present 5-year portion of the

Renewal Contract's twenty-year term, to establish the rights and obligations of the parties with respect to Section 5 and Section 8 of the Renewal Contract regarding the application of the Fifth-Year Adjustment, and to assure that defendants comply with their obligations to New Lansing under Section 5 and Section 8 of the Renewal Contract consistent with the Court's declarations on a going-forward basis.

35. There is no adequate remedy at law to compensate New Lansing for the loss of contract rents it could appropriately charge for Lansing Garden apartments.

## COUNT TWO
## DECLARATORY JUDGMENT

36. New Lansing incorporates by reference the allegations contained in all previous paragraphs as if fully restated herein.

37. There is a substantial and actual controversy between the parties regarding the Renewal Contract and the parties' respective rights and obligations going forward for the remainder of its twenty-year term, and specifically with respect to the Fifth-Year Adjustment.

38. A declaration of the parties' respective rights will clarify the legal relations between the parties going forward in the performance of the Renewal Contract.

39. Under the terms of Section 5 and Section 8 of the Renewal Contract, New Lansing is entitled to the following declarations from the Court, without limitation:

a. That the Contract Administrator had and has sole authority and responsibility to determine the Fifth-Year Adjustment to which New Lansing may be entitled;

b. That the Contract Administrator may not abrogate to HUD its sole authority and responsibility under the Renewal Contract to determine the Fifth-Year Adjustment;

c.  That the Contract Administrator breached the Renewal Contract by abrogating to HUD its sole authority and responsibility under the Renewal Contract to determine the Fifth-Year Adjustment;

d.  That HUD had and has no authority under the Renewal Contract or the 2012 Guide Book to determine, approve or otherwise participate in determining the Fifth-Year Adjustment;

e.  That the Contract Administrator's application of the 140% Rule from the 2017 Guide Book imposed new and additional procedural and substantive requirements not in the 2012 Guide Book which were inconsistent with Section 5's provision for the Fifth-Year Adjustment and breached Section 8 of the Renewal Contract;

f.  That the Contract Administrator, acting in concert with HUD, failed to act fairly and in good faith in applying the 140% Rule so as to permit HUD to commission, approve and apply FRG's competing RCS in contravention of Section 5 and Section 8 of the Renewal Contract;

g.  That the Contract Administrator, acting in concert with HUD, failed to act fairly and in good faith by crediting and enforcing FRG's competing RCS and in responding to New Lansing's analysis and protest dated January 30, 2020;

h.  That New Lansing is presently entitled to a modification of contracts rents pursuant to the Fifth-Year Adjustment effective November 1, 2019 consistent with the 2019 Gill RCS approved by the Contract Administrator;

i.  That New Lansing is entitled to an order of specific performance requiring the Contract Administrator to prepare and execute a Rent Schedule based on the

approved 2019 Gill RCS, effective November 1, 2019 for the remaining Fifth-Year term;

j.  That New Lansing is further entitled to injunctive relief requiring the Contract Administrator to comply with the Court's declarations of the parties' rights and obligations with respect to the Fifth-Year Adjustment going forward for the remaining term of the Renewal Contract; and

k.  That New Lansing is entitled to an award of damages as restitution in an amount equal to the difference between the actual contract rents charged by New Lansing and the contract rents to which New Lansing was entitled to charge from November 1, 2019 until such time when New Lansing receives the adjusted rents pursuant to the Rent Schedule executed by the Contract Administrator as ordered by the Court.

## RELIEF REQUESTED

WHEREFORE, New Lansing prays the Court to enter judgment in its favor jointly and severally against the defendants as follows:

A.  Judgment for breach of contract on Count One in favor of New Lansing;

B.  A declaration adjudicating the parties' respective rights and obligations under the Renewal Contract, and including, without limitation, the declarations set forth in Count Two;

C.  An order of specific performance requiring the Contract Administrator to prepare and execute a Rent Schedule based on the approved 2019 Gill RCS, effective November 1, 2019 for the remaining Fifth-Year term;

D.   An order requiring the Contract Administrator to comply with the Court's declarations of the parties' rights and obligations with respect to the Fifth-Year Adjustment going forward for the remaining term of the Renewal Contract;

E.   An award of damages as restitution against the Contract Administrator in an amount equal to the difference between the actual contract rents charged by New Lansing and the contract rents to which New Lansing was entitled to charge from November 1, 2019 until such time when New Lansing receives the adjusted rents pursuant to the Rent Schedule executed by the Contract Administrator as ordered by the Court.

F.   An award of prejudgment interest on the award of damages prayed for in E;

G.   An award of costs and reasonable attorney's fees;

H.   Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/  Nelson E Genshaft
Nelson E Genshaft (0011023)
Strip, Hoppers, Leithart,
   McGrath & Terlecky Co., LPA
575 South Third Street
Columbus, OH  43215
Telephone:  (614) 228-6345
Facsimile:  (614) 228-6369
Email: neg@columbuslawyer.net
*Attorney for Plaintiff*

Motion to Appear *Pro Hac Vice* to be filed:

_____
Gary R. Greenberg (BBO #209420)
Peter Alley (BBO #552610)
Greenberg Traurig, LLP
One International Place, 20th Floor
Boston, MA  02110
Telephone  (617) 310-6000
Facsimile (617) 897-0995
*Attorneys for Plaintiff*

# EXHIBIT A



**Assisted**
**Housing**
    **Services**
      **Corporation**

April 3, 2015

New Lansing Gardens Housing Limited Partnership
Attn: Steven Klebanoff
5110 Nahant St.
Bethesda, MD 20816

Subject: **Contract Renewal Approval Letter**
Re:      Lansing Gardens
        Contract # OH160014004

Dear Mr. Klebanoff:

This letter is provided to inform you of the approval of your request to renew your Housing Assistance Payment Contract and your Mark-up-to-Market rents under Option 1a for the subject property's Section 8 contract. The term of the **Renewal Contract begins on 11/01/2014** and shall run for a **period of twenty (20) years, expiring 10/31/2034.**

**For those tenants whose total tenant payment will not be affected, the newly approved rents may be implemented effective 11/01/2014.** For those tenants whose total tenant payment **will** be affected (for example, if the utility allowance decreases), the newly approved rents may be implemented in accordance with the effective date of the rent schedule, after proper notice is given to said tenants, taking into consideration their lease provisions.

Enclosed you will find a fully executed rent schedule with an **effective date of 11/01/2014** and a copy of the new HAP contract.

The **Budget Authority** for this contract is **$144,639.**

In the event that your rent increase is retroactive, it is important that tenant data be processed properly via IMAX. Therefore, please ensure that certification types are processed in separate files. Please do not send more than one (1) certification in the same file for the tenant. For example, sending both an AR effective 11-01-06 and the GR certification effective 10-01-06 in the same file will cause an error in IMAX. This may cause your TRACS percentage to drastically decrease causing a delay in subsidy payment. To reduce possible issues, ensure that certification types are processed in separate files, and in the order listed:

- Process Move-Outs first
- Followed by Terminations
- Followed by full certifications (Move-Ins, Annuals and Interims)
- Followed by Unit Transfers
- Followed by Gross Rents

Should you have any questions or require further information with regard to this matter, please feel free to call me on **614-880-2233**.

Additionally, please confirm that IMAX has accepted the first file before sending an additional file.

Sincerely,

**Karen M White**
Central Contract Specialist


Enclosures

RECEIVED

**Rent Schedule
Low Rent Housing**

U.S. Department of Housing
And Urban Development
Office of Housing
Federal Housing Commissioner

FEB 18 2015

AHSC - COLS

OMB Approval No. 2502-0012
(exp. 7/31/2017)

See page 3 for Instruction, Public Burden Statement and Privacy Act requirements.

| Project Name Lansing Gardens | FHA Project Number OH160014004 | Date Rents Will be Effective (mm/dd/yyyy) 11/1/2014 |
|---|---|---|

**Part A – Apartment Rents**
Show the actual rents you intend to charge, even if the total of these rents is less than the Maximum Allowable Monthly Rent Potential.

| Col. 1 Unit type (Include Non-revenue Producing Units) | Col. 2 Number of Units | Contract Rents — Col. 3 Rent Per Unit | Contract Rents — Col. 4 Monthly Contract Rent Potential (Col. 2 x Col. 3) | Col. 5 Utility Allowances (Effective Date mm/dd/yyyy) / / | Col. 6 Gross Rent (Col. 3 + Col. 5) | Market Rents (Sec. 236 Projects Only) Col. 7 Rent Per Unit | Market Rents Col. 8 Monthly Market Rent Potential (Col. 2 x Col. 7) |
|---|---|---|---|---|---|---|---|
| 1 BR | 20 | $690 | $13800 | | $690 | | $0 |
| 2 BR | 24 | $750 | $18000 | | $750 | | $0 |
| 3 BR | 10 | $915 | $9150 | | $915 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |
| | | | $0 | | $0 | | $0 |

| Total Units | 54 | Monthly Contract Rent Potential (Add Col. 4)* $40,950.00 | Monthly Market Rent Potential (Add Col. 8)* $0.00 |
|---|---|---|---|
| | | Yearly Contract Rent Potential (Col. 4 Sum x 12)* $491,400.00 | Yearly Market Rent Potential (Col. 8 Sum x 12)* $ 0.00 |

* These amounts may not exceed the Maximum Allowable Monthly Rent Potential approved on the last Rent Computation Worksheet or requested on the Worksheet you are now submitting.  Market Rent Potential applies only to Section 236 Projects.

**Part B – Items Included in Rent**

**Equipment/Furnishings in Unit** (Check those included in rent.)

☒ Range  ☐ Dishwasher  ☐ _____
☒ Refrigerator  ☒ Carpet  ☐ _____
☐ Air Conditioner  ☐ Drapes  ☐ _____
☒ Disposal  ☐ _____  ☐ _____

**Utilities** (Check those included in rent.  For each item, (even those not included in rent), enter E, F, or G on line beside that item) E=electric; G=gas, F=fuel oil or coal.

☒ Heating E  ☒ Hot Water E  ☒ Lights, etc. E
☐ Cooling ___  ☒ Cooking E  ☒ Water/Sewer

**Services/Facilities** (check those included in rent)

☒ Parking  ☒ Trash  ☐ Nursing Care
☒ Laundry  ☒ A/C 1BR Only  ☐ Linen/Maid Service
☐ Swimming Pool  ☐ _____
☐ Tennis Courts  ☐ _____

**Part C – Charges in Addition to Rent** (e.g., parking, cable TV, meals)

| Purpose | Monthly Charge |
|---|---|
| A/C Charge if Resident Installs window unit | $ 32.00 |
| A/C charge does not apply to 1BR | $ |
| | $ |
| | $ |
| | $ |

**Part D – Non-Revenue Producing Space**

| Col. 1 Use | Col. 2 Unit Type | Col. 3 Contract Rent |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| Total Rent Loss Due to Non-Revenue Units | | $0 |

**Part E – Commercial Space** (retail, offices, garages, etc.)

| Col. 1 Use | Col. 2 Monthly Rent Potential | Col. 3 Square Footage | Col. 4 Rental Rate Per Sq. Ft. (Col. 2 divided by Col. 3) |
|---|---|---|---|
| | | | |
| | $ | | |
| Total Commercial Rent Potential | | | |

**Part F – Maximum Allowable Rent Potential**

| Enter Maximum Allowable Monthly Potential From Rent Computation Worksheet (to be competed by HUD or lender) | $40,950.00 |
|---|---|

Previous editions are obsolete

form HUD-92458 (11/05)
ref Handbook 4350.1

RECEIVED

FEB 18 2015

**Part G – Information on Mortgagor Entity**

Name of Entity *New Lansing Gardens Housing Limited Partnership*

AHSC-COLS

Type of Entity
- [ ] Individual
- [ ] Corporation
- [ ] General Partnership
- [x] Limited Partnership
- [ ] Joint Tenancy/Tenants in Common
- [ ] Trust
- [ ] Other (specify)

List all Principals Comprising Mortgagor Entity: provide name and title of each principal. Use extra sheets, if needed. If mortgagor is a:
- corporation, list: (1) all officers; (2) all directors; and (3) each stockholder having a 10% or more interest.
- partnership, list: (1) all general partners; and (2) limited partners having a 25% or more interest in the partnership.
- trust, list: (1) all managers, directors or trustees and (2) each beneficiary having at least a 10% beneficial interest in the trust.

Name and Title

*Sumner Realty Co., Managing General Partner*

Name and Title

*John H. Nelson, IV, General Partner*

Name and Title

*First Ohio Housing Limited Partnership, Limited Partner*

Name and Title

Name and Title

Name and Title

Name and Title

Name and Title

Name and Title

Name and Title

**Part H – Owner Certification**

To the best of my knowledge, all the information stated herein, as well as any information provided in the accompaniment herewith, is true and accurate.
Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012, 31 U.S.C. 3729, 3802)

| Name and Title *Steven Klebanoff President of Managing General Partner* | Authorized Official's Signature | 02/18/2015 Date (mm/dd/yyyy) |
|---|---|---|

**Part I – HUD/Lender Approval**

| Addendum Number | Branch Chief/Lender Official Signature | |
|---|---|---|
| HAP Contract Number OH160014004 | | Date (mm/dd/yyyy) |
| Exhibit Number | Director, Housing Management Division Signature *AHSC Marilee Stretton* | 02/19/2015 Date (mm/dd/yyyy) |
| Loan Servicer Signature | Date (mm/dd/yyyy) 2/19/15 | |

Previous editions are obsolete

Page 2 of 3

form HUD-92458 (11/05)
ref Handbook 4350.1

RECEIVED

Attachment 12

MAR 3 0 2015

AHSC - COLS

**U.S. Department of Housing and Urban Development**
**Office of Housing**

**PROJECT-BASED SECTION 8**

**HOUSING ASSISTANCE PAYMENTS**
**RENEWAL CONTRACT**
**FOR MARK-UP-TO-MARKET PROJECT**

OMB Control #2502-0587

"Public reporting burden for this collection of information is estimated to average 1 hour. This includes the time for collecting, reviewing, and reporting the data. The information is being collected for obtaining a signature on legally binding documents and will be used to enforce contractual obligations. Response to this request for information is required in order to receive the benefits to be derived. This agency may not collect this information, and you are not required to complete this form unless it has a currently valid OMB control number. No confidentiality is assured."

**PREPARATION OF CONTRACT**

Reference numbers in this form refer to notes at the end of the contract text. These endnotes are instructions for preparation of the Renewal Contract. The instructions are not part of the Renewal Contract.

1

Attachment 12

RECEIVED

MAR 3 0 2015

AHSC - COLS

# RENEWAL HAP CONTRACT
# FOR SECTION 8 MARK-UP-TO-MARKET PROJECT[1]

## 1    CONTRACT INFORMATION[2]

### PROJECT

**Section 8 Project Number:** OH160014004

**Section 8 Project Number of Expiring Contract:** OH160014004

**FHA Project Number (if applicable):** _____

**Project Name:** Lansing Gardens

**Project Description:**[3]

68210 Commercial Dr.
Bridgeport, OH 43912 - 1575

☐    Check this box if the project is a Section 236 project or a
Section 221(d)(3) below market interest rate (BMIR) project at the
beginning of the Renewal Contract term.

### PARTIES TO RENEWAL CONTRACT

**Name of Contract Administrator[4]**
Assisted Housing Services Corporation as an Agent for Columbus Metropolitan Housing
Authority

**Name of Owner**

New Lansing Gardens Housing Limited Partnership

1

Form HUD-9638
Renewal Contract -- Mark-Up-to-Market
REV 10/09

Attachment 12

---

**2    TERM AND FUNDING OF RENEWAL CONTRACT**

    **a**    The Renewal Contract begins on ___11/01/2014___[5] and shall run for a period of ___20___[6] years.

    **b**    Execution of the Renewal Contract by the Contract Administrator is an obligation by HUD of $ ___144,639___,[7] an amount sufficient to provide housing assistance payments for approximately ___6___[8] months of the first annual increment of the Renewal Contract term.

    **c**    HUD will provide additional funding for the remainder of the first annual increment and for subsequent annual increments, including for any remainder of such subsequent annual increments, subject to the availability of sufficient appropriations.  When such appropriations are available, HUD will obligate additional funding and provide the Owner written notification of (i) the amount of such additional funding, and (ii) the approximate period of time within the Renewal Contract term to which it will be applied.

**3    RENEWAL CONTRACT**

    **a**    **Parties**

        **(1)**    This contract ("Renewal Contract") is a housing assistance payments contract ("HAP contract") between the contract administrator and the owner of the housing.

        **(2)**    If HUD is the contract administrator, HUD may assign the Renewal Contract to a public housing agency ("PHA") for the purpose of PHA administration of the Renewal Contract, as contract administrator, in accordance with the Renewal Contract (during the term of the annual contributions contract ("ACC") between HUD and the PHA). Notwithstanding such assignment, HUD shall remain a party to the provisions of the Renewal Contract that specify HUD's role pursuant to the Renewal Contract, including such provisions of section 8 (applicable requirements), section 9 (statutory changes during term),  section 10 (distributions)  and section 11 (PHA default) of the Renewal Contract.

    **b**    **Statutory authority**

    The Renewal Contract is entered pursuant to section 8 of the United States Housing Act of 1937 ("Section 8") (42 U.S.C. 1437f),

2

and section 524(a) of the Multifamily Assisted Housing Reform and Affordability Act of 1997 (MAHRA) ** (Title V of Public Law No.105-65, October 27, 1997, 111 Stat. 1384), as amended.

**c    Expiring Contract**

Previously, the owner entered into a Housing Assistance Payments Contract ("Expiring Contract") with HUD or a PHA to make Section 8 housing assistance payments to the owner for eligible families living in the project.  The term of the Expiring Contract has expired or will expire prior to the beginning of the term of the Renewal Contract.

**d    Purpose of Renewal Contract**

The purpose of the Renewal Contract is to renew the Expiring Contract for an additional term.  During the term of the Renewal Contract, the contract administrator will make housing assistance payments to the owner in accordance with the provisions of the Renewal Contract.  Such payments shall only be made for contract units occupied by eligible families ("families") leasing decent, safe and sanitary units from the owner in accordance with HUD regulations and other requirements.

**e    Contract units**

The Renewal Contract applies to the project contract units identified in Exhibit A by size and applicable contract rents.

**4    EXPIRING CONTRACT – PROVISIONS RENEWED**

**a    **Except as specifically modified by the Renewal Contract, all provisions of the Expiring Contract are renewed (to the extent such provisions are consistent with statutory requirements in effect at the beginning of the Renewal Contract term).

**b    **Any provisions of the Expiring Contract concerning any of the following subjects are not renewed, and shall not be applicable during the renewal term:

**(1)    **The amount of the monthly contract rents;

**(2)    **Contract rent adjustments;

3

  **(3)** Project account (sometimes called "HAP reserve" or "project reserve") as previously established and maintained by HUD pursuant to former Section 8(c)(6) of the United States Housing Act of 1937 (currently Section 8(c)(5) of the Act, 42 U.S.C. 1437f(c)(5)). Section 8(c)(5) does not apply to the Renewal Contract, or to payment of housing assistance payments during the Renewal Contract term.

 **c** The Renewal Contract includes those provisions of the Expiring Contract that are renewed in accordance with this section.

## 5 CONTRACT RENT

 **a** **Initial contract rents**

  At the beginning of the Renewal Contract term, and until contract rents for units in the project are adjusted in accordance with section 5b, the contract rent for each bedroom size (number of bedrooms) shall be the initial contract rent amount listed in Exhibit A, which is attached to and made a part of the Renewal Contract. The initial contract rent amounts listed in Exhibit A have been increased to market levels under the HUD Mark-Up-to-Market Option.

 **b** **Contract rent adjustments**

  **(1)** **OCAF adjustment**

   Except for adjustment of the contract rents to comparable market rents at the expiration of each 5-year period (as provided in paragraph 5b(2) of this section) ("fifth year adjustment"), during the term of the Renewal Contract the contract administrator shall annually, on the anniversary of the Renewal Contract, adjust the amounts of the monthly contract rents in accordance with HUD requirements, using an operating cost adjustment factor (OCAF) established by HUD. Such adjustments by use of the OCAF shall not result in a negative adjustment (decrease) of the contract rents. The OCAF shall not be used for a fifth year adjustment.

  **(2)** **Fifth year adjustment (comparability adjustment at expiration of each 5-year period, *if applicable*)**

   **(a)** This section 5(b)(2) is only applicable if the term of the Renewal Contract is longer than five (5) years (from the first day of the term specified in section 2a).

4

**(b)** At the expiration of each 5-year period of the Renewal Contract term, the contract administrator shall compare existing contract rents with comparable market rents for the market area. At such anniversary of the Renewal Contract, the contract administrator shall make any adjustments in the monthly contract rents, as reasonably determined by the contract administrator in accordance with HUD requirements, necessary to set the contract rents for all unit sizes at comparable market rents. Such adjustments may result in a negative adjustment (decrease) or positive adjustment (increase) of the contract rents for one or more unit sizes.

**(c)** To assist in the redetermination of contract rents, the contract administrator may require that the owner submit to the contract administrator a rent comparability study prepared (at the owner's expense) in accordance with HUD requirements.

**(3)** **Procedure for rent adjustments during renewal term**

To adjust contract rents during the term of the Renewal Contract (in accordance with paragraph 5b(1) or paragraph 5b(2)), the contract administrator shall give the owner notice of the revised Exhibit A. The revised Exhibit A shall specify the adjusted contract rent amount for each bedroom size as determined by the contract administrator in accordance with paragraph 5b(1) or paragraph 5b(2). The notice shall specify when the adjustment of contract rent is effective. The notice by the contract administrator of the revised Exhibit A constitutes an amendment of the Renewal Contract.

**(4)** **No other adjustments**

Except for contract rent adjustments in accordance with paragraph 5b, there shall not be any other adjustments of the contract rents during the term of the Renewal Contract. Special adjustments shall not be granted.

**6** **OWNER WARRANTIES**

a The owner warrants that it has the legal right to execute the Renewal Contract and to lease dwelling units covered by the contract.

5

b    The owner warrants that the rental units to be leased by the owner under the Renewal Contract are in decent, safe and sanitary condition, as defined by HUD, and shall be maintained in such condition during the term of the Renewal Contract.

**7    OWNER NOTICE**

a    Before termination of the Renewal Contract, the owner shall provide written notice to the contract administrator and each assisted family in accordance with the law and HUD requirements.

b    If the owner fails to provide such notice in accordance with the law and HUD requirements, the owner may not increase the tenant rent payment for any assisted family until such time as the owner has provided such notice for the required period.

**8    APPLICABLE REQUIREMENTS**

The Renewal Contract shall be construed and administered in accordance with all statutory requirements, and with all HUD regulations and other requirements, including amendments or changes in HUD regulations and other requirements during the term of the Renewal Contract. However, any changes in HUD regulations and requirements which are inconsistent with the provisions of the Renewal Contract, including the provisions of section 5 (contract rent) and section 10 (distributions), shall not be applicable.

6

Attachment 12

**9    STATUTORY CHANGES DURING TERM**

If any statutory change during the term of the Renewal Contract is inconsistent with section 5 or section 10 of the Renewal Contract, and if HUD determines, and so notifies the contract administrator and the owner, that the contract administrator is unable to carry out the provisions of section 5 or section 10 because of such statutory change, then the contract administrator or the owner may terminate the Renewal Contract upon notice to the other party.

**10    DISTRIBUTIONS**

During the term of the Renewal Contract, neither HUD nor the PHA may impose any additional limitations on distributions of project funds other than any distribution limitations specified in Exhibit B, which is attached to and made a part of this Renewal Contract.

**11    PHA DEFAULT**

   **a**    This section of the Renewal Contract applies if the contract administrator is a PHA acting as contract administrator pursuant to an annual contributions contract ("ACC") between the PHA and HUD.  This includes a case where HUD has assigned the Renewal Contract to a PHA contract administrator, for the purpose of PHA administration of the Renewal Contract.

   **b**    If HUD determines that the PHA has committed a material and substantial breach of the PHA's obligation, as contract administrator, to make housing assistance payments to the owner in accordance with the provisions of the Renewal Contract, and that the owner is not in default of its obligations under the Renewal Contract, HUD will take actions HUD determines necessary for the continuation of housing assistance payments to the owner in accordance with the Renewal Contract.

**12    SECTIONS 236 AND 221(D)(3) BMIR PROJECTS -- PREPAYMENT**

   **a**    This section of the Renewal Contract shall be applicable if the project is a Section 236 project or a 221(d)(3) BMIR project (See the check-box at section 1 of the Renewal Contract).

7

| | |
|---|---|
| b | During the term of the Renewal Contract, the owner shall not prepay any FHA-insured mortgage on the project, except where HUD, in its sole discretion, approves the prepayment as a component of a transaction whereby the project is preserved as affordable housing. |

## 13 EXCLUSION OF THIRD-PARTY RIGHTS

a    The contract administrator does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with the contract administrator's implementation of the Renewal Contract, or as a result of any other action or failure to act by the owner.

b    The owner is not the agent of the contract administrator or HUD, and the Renewal Contract does not create or affect any relationship between the contract administrator or HUD and any lender to the owner or any suppliers, employees, contractors or subcontractors used by the owner in connection with implementation of the Renewal Contract.

c    If the contract administrator is a PHA acting as contract administrator pursuant to an annual contributions contract ("ACC") between the PHA and HUD, the contract administrator is not the agent of HUD, and the Renewal Contract does not create any relationship between HUD and any suppliers, employees, contractors or subcontractors used by the contract administrator to carry out functions or responsibilities in connection with contract administration under the ACC.

## 14 WRITTEN NOTICES

Any notice by the contract administrator or the owner to the other party pursuant to the Renewal Contract must be in writing.

8

RECEIVED

APR 03 2015

AHSC - COLS
RECEIVED

MAR 30 2015

AHSC - COLS

Attachment 12

---

SIGNATURES

Contract administrator (HUD or PHA)

Name of Contract Administrator
Assisted Housing Services Corporation as an Agent for Columbus Metropolitan Housing
Authority

By: _Tina Gibson for Justin Davis)_
Signature of authorized representative

Justin Davis, Acting General Manager for Contract Administration
Name and official title

Date ___3/30/15___

U.S. Department of Housing and Urban Development

By: _____
Signature of authorized representative
Barbara Chiapella, Asset Management Division Director, Detroit Satellite
Office
Name and official title

Date ___4-3-15___

Owner
Name of Owner
New Lansing Gardens Housing Limited Partnership

By; _____
Signature of authorized representative

Name and title _Steven Klebanoff_
_President Summer Realty Co., General Partner_

Date _3-27-2015_

9

Form HUD-9638
Renewal Contract – Mark-Up-to-Market
REV 10/09

Attachment 12

# EXHIBIT A

## IDENTIFICATION OF UNITS ("CONTRACT UNITS")
## BY SIZE AND APPLICABLE CONTRACT RENTS

**Section 8 Contract Number:** OH160014004

**FHA Project Number (if applicable):** _____

**Effective Date of the Rent Increase (if applicable):** 11/01/2014

| Number of Contract Units | Number of Bedrooms | Contract Rent | Utility Allowance | Gross Rent |
|---|---|---|---|---|
| 1 BR | 20 | $690 | $0 | $690 |
| 2 BR | 24 | $750 | $0 | $750 |
| 3 BR | 10 | $915 | $0 | $915 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**NOTE:**
This Exhibit will be amended by contract administrator notice to the owner to specify adjusted contract rent amounts as determined by the contract administrator in accordance with section 5b(3) of the Renewal Contract.

Comments: _____

10

**EXHIBIT B**

**DISTRIBUTION LIMITATIONS**

**FOR PROJECT NOT SUBJECT TO DISTRIBUTION LIMITATIONS:**

If the project is not subject to any limitations on distribution of project funds, either pursuant to an FHA Regulatory Agreement or pursuant to the Expiring Contract, neither HUD nor the PHA may impose any additional limitations on distribution of project funds during the term of the Renewal Contract.

**FOR PROJECT SUBJECT TO DISTRIBUTION LIMITATIONS:**

If the project is subject to any limitations on distribution of project funds pursuant to an FHA Regulatory Agreement or pursuant to the Expiring Contract, such limitations on distribution shall continue to be applicable during the term of the Renewal Contract, provided that the owner may take an increased distribution in accordance with the Section 8 Renewal Policy Guidance for Renewal of Project-Based Section 8 Contracts, (the "Guidebook").

However, owners of Section 8 properties must maintain the property in good condition, as demonstrated by a REAC score of 60 or higher, in order to take increased distributions.

The owner shall comply with the distribution limitations. The maximum distribution to the owner shall be equal to the total of:

1    The limited distribution permitted pursuant to the FHA Regulatory agreement or the Expiring Contract, **plus**

2    Any increased distribution as approved by HUD in accordance with the Guidebook.

Form HUD-9638
Renewal Contract -- Mark-Up-to-Market
REV 10/09

RECEIVED

MAR 3 0 2015

AHSC - COLS

## Memorandum to the file for Lansing Gardens

By mutual agreement, the Owner and the CA have determined to terminate the Renewal Contract that runs from **11/01/2011** to **10/31/2031** and, instead, to enter into a 20-year contract, which will run from **11/01/2014** to **10/31/2034**. The owner has also executed the Preservation Exhibit which states that upon expiration the 20-year Renewal Contract shall renew the contract for an additional term at least equal to the number of years remaining on the existing HAP contract that is being terminated subject to all applicable laws and regulations in effect at that time.

Contract Name: _____ Lansing Gardens _____

Contract Number: _____ OH160014004 _____

Owner Name:  __ New Lansing Gardens Housing Limited Partnership ___

Owner Signature: _____

*President, Sumner Realty Co. General Partner*

RECEIVED

MAR 3 0 2015

**Attachment 1**                                    AHSC - COLS

## PRESERVATION EXHIBIT

   Subject to all applicable laws and regulations in effect upon expiration, the Renewal Contract shall automatically renew for a term of ___17___[1] year(s) beginning on ___11/01/2034___.[2] This requirement shall be binding on the Owner and the Contract Administrator, as identified in section 1 of the Renewal Contract, and on all their successors and assigns.

Contract Name: _____Lansing Gardens_____

Contract Number: _____OH160014004_____

Owner Name: New Lansing Gardens Housing Limited Partnership____

Owner Signature: _____

*President - Sumner Realty Co., General Partner*